## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

TATU WADESISI                            CASE NO.
17603 WHITNEY RD.
STRONGSVILLE, OH                         JUDGE
44136

       PLAINTIFF,                    **COMPLAINT**

  VS.                                  **(Jury Demand Endorsed Hereon)**

CATHOLIC DIOCESE OF
CLEVELAND
1404 E. 9TH ST.
CLEVELAND, OH 44114

and

BRANDON MACDOWELL
6348 POPLAR DR.
INDEPENDENCE, OH 44131

and

FATHER ROBERT BEGIN
2027 W. 65TH ST.
CLEVELAND, OH 44102

and

FATHER CAROLI SHAO A.J.
2027 W. 65TH ST.
CLEVELAND, OH 44102

and

FATHER BENJAMIN KOKA A.J.
2027 W. 65TH ST.
CLEVELAND, OH 44102

and

SUZANNE SCHILL, AS THE
FIDUCIARY OF THE ESTATE OF
DEACON WILLIAM E. SCHILL
6277 OAKWOOD CIRCLE
NORTH RIDGEVILLE, OH 44039

and

CLEVELAND CENTRAL
CATHOLIC HIGH SCHOOL
6550 BAXTER AVENUE
CLEVELAND, OH 44105

DEFENDANTS.

## **INTRODUCTION**

1. This case arises out of the abject failure of the Catholic Diocese of Cleveland and its churches to protect its minor, female congregationalists from its employees who have committed sexual offenses against them.

2. Specifically, the Plaintiff brings these claims against the Defendants for their participation to the sexual harassment, assault, and rape she suffered at the hands of an employee of Diocese of Cleveland.

3. The Defendants knew about each of these incidents and the continuous nature of the harassment and did nothing to prevent the continued misconduct. Instead, the Defendants used their position of power to convince the victim to not pursue charges while protecting

her assailant, further contributing to her traumatization from the sexual assault and harassment.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the Constitution and the laws of the United States. Specifically, Plaintiff asserts claims under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq*.

5.  This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) as Plaintiff's state law claims are so related to Plaintiff's 20 U.S.C. § 1681 *et seq.* claim that they form part of the same case or controversy under Article III of the United States Competition.

6.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

7.  Plaintiff Tatu Wadesisi, is a female resident of Cuyahoga county who at all relevant times was a parishioner of St. Colman's Church, a member-church of the Diocese of Cleveland.

8.  Defendant Catholic Diocese of Cleveland (hereinafter referred to as the "Diocese of Cleveland") is the governing body that oversees the member parishes and schools in Cuyahoga, Summit, Lorain, Lake, Geauga, Medina, Wayne, and Ashland Counties. At all relevant times the Diocese of Cleveland oversaw St. Colman's Church and its employees.

9.  Defendant Brandon MacDowell, is a male resident of Cuyahoga county who at all relevant times was an employee of St. Colman's Church, a member-church of the Diocese

of Cleveland.

10. Defendant Robert Begin, is a male who at all relevant times was a priest at St. Colman's Church, a member-church of the Diocese of Cleveland.

11. Defendant Caroli Shao A.J., is a male who at all relevant times was a priest at St. Colman's Church, a member-church of the Diocese of Cleveland.

12. Defendant Benjamin Koka A.J., is a male who at all relevant times was a priest at St. Colman's Church, a member-church of the Diocese of Cleveland.

13. Defendant Cleveland Central Catholic High School is a private, parochial high school located in Cleveland, Ohio that receives federal financial assistance.

## **FACTUAL ALLEGATIONS**

14. St. Colman's Church acted negligently toward Plaintiff by failing to supervise, train, and negligently retaining its employees with relation to the physical, sexual and emotional abuse of Plaintiff through March 2021.

15. Plaintiff was born in the Democratic Republic of Congo.

16. Plaintiff and her family immigrated to Cleveland, Ohio as refugees from the Democratic Republic of the Congo in 2005; Plaintiff was five (5) years old.

17. At the prompting of Catholic Charities, shortly after immigrating, Plaintiff and her family began attending Mass and joined the congregation of St. Colman Church located at 2027 West 65th St. Cleveland, OH 44102.

18. Catholic Charities assisted the Plaintiff and her family at their most vulnerable time and offered the Catholic Church as a place of safety and solitude from the atrocities and dangers they had faced.

19. St. Colman Church is a member of the Diocese of Cleveland.

20. St. Colman was an integral part of Plaintiff's life during her youth and adolescence.

21. At age fourteen (14) Plaintiff became a server for the congregation during Mass.

22. As a part of her role as server, Plaintiff was responsible for coming to St. Colman before Mass to prepare the Church for the service. The door would be left unlocked for Plaintiff to come in, set bread out, pour wine, and set up the cloths that would be needed for Mass.

23. Two weeks after Plaintiff began this role, Defendant MacDowell was hired as the new maintenance worker for St. Colman's Church.

24. Father Begin introduced Plaintiff to Defendant MacDowell. Father Begin notified Plaintiff that Defendant MacDowell would be responsible for letting Plaintiff into the church before Mass and would help her with her duties.

25. Based on the communications from Father Begin, Plaintiff understood that she should look to Defendant MacDowell for assistance whenever she needed help at the church.

26. Plaintiff was introduced to Defendant MacDowell by and through the Church when Plaintiff the year she turned fourteen (14) years old and the year Defendant MacDowell turned twenty nine (29) years old.

27. While at the Church and while Defendant MacDowell was on duty in his employment role in the Church, Plaintiff and Defendant MacDowell began to spend a lot of time alone together. On multiple occasions throughout the years Defendant MacDowell would complete his daily tasks and would stay to spend time with Plaintiff while she prepared for the Mass.

28. Defendant MacDowell used this time that he had at the Church while Plaintiff was a young teenager to groom Plaintiff. As Plaintiff and Defendant MacDowell spent more time together, they began to open up to each other and share personal things with each

other. Plaintiff conveyed to Defendant MacDowell that she felt lonely and he always told her he understood and was there for her.

29. Plaintiff and Defendant MacDowell maintained a years-long relationship throughout Plaintiff's teenage years.

30. Defendant MacDowell was not the only member of the Church who took a particular interest in the Plaintiff. In fact, two members of the Clergy at the Church made distinct comments about the Plaintiff and their attractions to her appearance.

31. In 2016, Defendant Caroli told plaintiff that he wished she would go on a mission trip with him so he could kidnap her while they were there and make her his wife.

32. In Spring of 2017, Defendant MacDowell told Plaintiff that Defendant Schill had made comments about Plaintiff being a "looker." Defendant MacDowell told Plaintiff that he agreed.

33. In April 2017, eight months before Plaintiff's eighteenth birthday, Defendant MacDowell texted Plaintiff to tell her that he had a crush on her and wanted to try to be together.

34. Defendant MacDowell told Plaintiff he was a loyal person and when he is in a relationship he does not cheat and was looking for a monogamous relationship.

35. Plaintiff told Defendant MacDowell that she was a minor and he implied that he wanted to pursue the relationship right away and that they could keep it a secret from everyone else.

36. Given the extent of their relationship, Plaintiff believed that Defendant MacDowell would never hurt her or jeopardize her safety.

37. Plaintiff knew she was much younger than Defendant MacDowell and asked for time to think over and respond to his request.

38. When Plaintiff next saw Defendant MacDowell he took her to the basement and kissed her; at this time Plaintiff believed Defendant MacDowell was serious about his commitment to her and knew she was the person he wanted to spend his time with.

39. Defendant MacDowell repeatedly reiterated to Plaintiff it was important they did not tell anyone about their relationship.

40. One afternoon Plaintiff took off work, but she told her parents she was going to her shift. Defendant MacDowell picked Plaintiff up from her house to take her to his home in Independence, Ohio. Plaintiff conveyed that she had never been in a relationship before and had been raised to believe that she was not desirable to boys and that the Church and her religious beliefs were important to her. Plaintiff explained that she believed that she should wait until marriage to have sexual intercourse.

41. Plaintiff told Defendant MacDowell that she was not comfortable with sexual activity past kissing; Defendant MacDowell conveyed that he was fine with not pushing it farther. When they got to Defendant MacDowell's home, however, he pulled her in and kissed her then started using his body to push her into the living room. He then sat down on the loveseat and pushed her onto her knees. He then unzipped his pants and told her to play with his penis.

42. Defendant MacDowell demonstrated what he wanted her to do. Defendant MacDowell forced Plaintiff to comply with his request to put his penis in her mouth and follow his direction. When Plaintiff finished, Defendant MacDowell told her that she did a good job and put Netflix on for the pair to watch the rest of the evening.

43. Defendant MacDowell began to consistently pick Plaintiff up from school and home and force her to perform oral and manual stimulation.

44. During the late Spring of 2017 Defendant MacDowell picked Plaintiff up from Cleveland
    Central Catholic High School and took her to his home. On the way to his home
    Defendant MacDowell told Plaintiff that if she wanted to start to enjoy sex, she would
    have to allow him to penetrate her. Plaintiff agreed that Defendant MacDowell could and
    so he dropped her off and drove to Walgreens to get condoms.

45. Defendant MacDowell had sexual intercourse with Plaintiff; she did not enjoy it.

46. Defendant MacDowell would often ask Plaintiff if she enjoyed having sex with him.
    When Plaintiff conveyed what would make her enjoy the experience, Defendant
    MacDowell became angry with her and told her that he didn't like it when she was
    assertive about her likes and needs.

47. The parties continued their sexual relationship through the Summer of 2017.

48. In October 2017 the parties began having conversations about what they would do once
    Plaintiff turned eighteen and their relationship no longer had to be a secret.

49. Shortly after these conversations, Defendant MacDowell called Plaintiff to end their
    relationship, claiming that his mental health had made him make some bad decisions.

50. Despite Defendant MacDowell's claim that his mental health impacted his
    decision-making abilities and that the two should stop seeing each other, Defendant
    MacDowell continued his sexual contact with Plaintiff for a few more weeks before
    ultimately ending all sexual contact with the Plaintiff.

51. After Defendant MacDowell ended the relationship and comments about his negative
    mental health, Plaintiff reached out to the Cleveland Central Catholic High School's
    admissions counselor, Carmella Davies ("Davies") to report the sexual relationship that
    the adult employee of the Catholic Church had with Plaintiff starting with the grooming

that occurred when she was fourteen and continuing through October 2017.

52. Davies knew that Plaintiff had been subjected to sexual harrassment, sexual violence and that the school had an obligation to provide a safe environment, free from a sexually hostile environment.

53. MacDowell's actions and the response by the school and students at the school arises to the level of sufficiently severe, pervasive, and/or persistent behavior that it limited or interfered with Plaintiff's educational opportunities.

54.  The school was required to take prompt and effective steps reasonably calculated to end the harassment, eliminate any hostile environment and its effects, and prevent the harassment from recurring and failed to do so.

55. Plaintiff saw Davies nearly every day after school while dealing with her breakup. Davies had Plaintiff write a letter about her relationship; this letter included facts such as the existence of a relationship with a man named Brandon that she knew through the Church and was much older than her. Davies took no action.

56. Plaintiff stayed a parishioner of St. Colman's Church until August of 2018.

57. In June of 2018, before Plaintiff left for college, Defendant MacDowell contacted Plaintiff and asked if she wanted to hang out after he was done at St. Colman's Church for the day. The parties were friendly at this time, so Plaintiff agreed. When she got to Defendant MacDowell's he asked if Plaintiff wanted to cuddle. Plaintiff conveyed that she did not. Instead of accepting her answer, Defendant MacDowell left his seat and laid down behind Plaintiff.

58. Defendant MacDowell did not attempt to kiss Plaintiff but instead, without consent, turned her over on her stomach, pulled down her and his pants, and vaginally penetrated

her. Plaintiff never consented to have sexual intercourse with Defendant MacDowell.

59. When Defendant MacDowell completed, he lifted himself off of Plaintiff and went to his bedroom without saying a word. Plaintiff left at this time.

60. After this incident, Plaintiff went to Matthew Wallenhorst ("Wallenhorst"), a teacher at Cleveland Central Catholic High School and a parishioner at St. Colman's Church. She told Wallenhorst what had happened with Defendant MacDowell, that she felt that something was really wrong, and was confused about the whole experience. She conveyed that Wallenhorst would know who she was dating through their involvement in the Church and that they had been in a relationship before she was eighteen. Wallenhorst did nothing with this information.

61. During Plaintiff's freshman and sophomore years of college Defendant MacDowell began harassing her and telling her that she was "having so much sex in college that her vagina was turned out."

62. During the Winter of her sophomore year of college (January 2020), Plaintiff decided it was imperative that she tell St. Colman's Church what had been happening between herself and Defendant MacDowell.

63. Plaintiff went to St. Colman's Church and spoke directly to Defendant Caroli where she told him everything that had happened with Defendant MacDowell.

64. Defendant Caroli told Plaintiff that he would discuss their conversation with Defendant Koka, but not Defendant Begin as he did not believe Defendant Begin would believe Plaintiff's story.

65. Defendant Caroli called Plaintiff back to his office a few days later and explained that the Diocese of Cleveland is aware that incidents like Plaintiff's happen in these spaces and

that they have established a program to show adults that work with children in the church how they are supposed to behave.

66. Defendant Caroli asked Plaintiff whether she would like to proceed with pressing charges against Defendant MacDowell, or if it would be enough for Defendant MacDowell's relationship with St. Colman's Church and the Diocese of Cleveland to be terminated. Plaintiff conveyed that it would be enough for her for Defendant MacDowell's position to be terminated.

67. Defendant Caroli told Plaintiff that he and Defendant Koka had noticed that Defendant MacDowell and Plaintiff acted abnormal around each other.

68. Defendant Caroli told Plaintiff that he had spoken to Defendant MacDowell about what Plaintiff had told him and that Defendant MacDowell had looked panicked and confessed everything to him.

69. Defendant Caroli told Plaintiff that St. Colman's Church had no choice but to fire Defendant MacDowell because the Church and the Diocese of Cleveland would be "on the hook" for his behavior. Plaintiff conveyed again that the termination of Defendant MacDowell would be sufficient for her. Defendant Caroli asked Plaintiff to keep the incident from her family.

70. A short time later, Defendant Caroli called the Plaintiff again and asked if she would have a meeting with himself and Defendant MacDowell at St. Colman's Church.

71. Plaintiff viewed St. Colman's Church as a second family and believed that the Church was trying to provide a feeling of closure in giving her the opportunity to face her abuser. For this reason alone, Plaintiff accepted Defendant Caroli's proposal.

72. The three individuals met in the basement of St. Colman's Church and discussed what

11

had happened between Defendant MacDowell and the Plaintiff.

73. Defendant Caroli provided Defendant MacDowell the opportunity to tell his side of the story. Defendant MacDowell explained that he had asked Plaintiff to be with him when she was seventeen years old and took her to his home in order to "satisfy himself."

74. Defendant Caroli listened to Defendant MacDowell's story.

75. On July 27, 2020 Defendant MacDowell agreed that this type of behavior should be categorized as rape or predatory.

76. Once Defendant MacDowell was finished, Defendant Caroli began to discuss the time that had passed since everything had begun and asked Defendant MacDowell to apologize, which Plaintiff accepted.

77. Defendant Caroli then told them that he had been thinking about their story and talking to God and that God told him that he did not have to fire Defendant MacDowell.

78. This was a total reversal from the representation Defendant Caroli had made to the Plaintiff about the termination of Defendant MacDowell from his position at St. Colman's Church.

79. Defendant Caroli then walked out of the meeting and told Plaintiff "thank you for not making a big deal about this."

80. During the middle of Plaintiff's Fall 2020 semester, she reached out to St. Colman's Church and asked to speak with the Church's collective leadership.

81. Plaintiff eventually told her story to her mother after her family noticed a marked change in Plaintiff's behavior.

82. At her mother's insistence, in March of 2021 Plaintiff returned to St. Colman's Church with her mother and sister, a law enforcement officer, to meet with Defendants Caroli,

Begin, and Koka concerning the physical, sexual and emotional abuse Plaintiff had
suffered from the age of fourteen (14) to that day due to the negligence of the Defendants.

83. Plaintiff conveyed to the Defendants that she had two specific grievances: 1) the abuse
the Church and Diocese of Cleveland by extension allowed and 2) when she reported the
abuse the Church did nothing to remediate the damage.

84. The Defendants did not object to Plaintiff's claim that they allowed an abuser to continue
to work for the Church.

85. When it became clear that Plaintiff would be requesting money damages, the Defendants
conveyed that the police would have to get involved and that terminating Defendant
MacDowell's employment would not be enough.

86. Defendants Caroli, Begin, and Koka requested that when Plaintiff spoke to the police she
not reference her first instance of telling Defendant Caroli of the abuse she faced, nor the
meeting between Plaintiff, Defendant MacDowell, and Defendant Koka that took place.

87. Defendant MacDowell was terminated from his position after the police were contacted.

### FIRST CAUSE OF ACTION
**Defendant Cleveland Central Catholic Highschool Failed to Comply with the
Requirements of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681**

88. Plaintiff repeats and incorporates herein all previously pleaded averments.

89. Defendant Cleveland Central Catholc Highschool subjected Plaintiff to a hostile
educational environment in violation of Title IX of the Education Amendments of 1972,
20 U.S.C. § 1681(a) ("Title IX"), because

    a.    Plaintiff, as a female, was a member of a protected class;

    b.    She was subjected to sexual harassment, assault, and violence an employee
of the Catholic Church;

    c.        She was subjected to harassment based on her sex; and

    d.        She had a right to attend a school that was a safe environment free from a sexually hostile environment.

    e.        She was subjected to a hostile educational environment created by the School's failure to properly investigate and/or address the sexual assault, harassment, and violence.

90. The sex-based harassment articulated in Plaintiff's allegations above was so severe, pervasive, and objectively offensive that is deprived Plaintiff of access to educational opportunities or benefits provided by the school.

91. The harassment Plaintiff suffered at the hand of Defendant MacDowell was so severe that it effectively barred Plaintiff's access to educational opportunities and benefits in violation of Title IX. Examples of the harassment include:

    a.    Grooming the Plaintiff from the age of fourteen through his position with the Diocese of Cleveland.

    b.    Pursuing a relationship with Plaintiff despite his position of power over the Plaintiff and her not yet being the age of majority.

    c.    Forcing Plaintiff to commit sexual acts she did not consent to.

    d.    Sexually assaulting the Plaintiff.

    e.    Insisting Plaintiff kept their relationship a secret with the implication that once she reached the age of majority they would be able to tell others then terminating the relationship shortly before Plaintiff's eighteenth birthday.

    f.    Menacing phone calls to the Plaintiff.

92. Defendant Cleveland Central Catholic High School acted with willful, deliberate, and intentional indifference to the harassment that Plaintiff suffered at the hands of Defendant MacDowell by:

    a. Failing to report Plaintiff's relationship with an adult, male employee of the Diocese of Cleveland.

    b. Failing to report the grooming of Plaintiff by Defendant MacDowell from the age of fourteen.

    c. Making no investigation into Plaintiff's claims of assault and harassment suffered at the hands of Defendant MacDowell.

    d. Making Plaintiff relive the experience and suffer through the emotions by requiring her to write a letter detailing her relationship with her abuser, Defendant MacDowell.

93. Defendant breached its duty to provide an equal opportunity to education to Plaintiff in violation of Title IX by failing to take any immediate, effective remedial steps to investigate or mitigate the harm from the harassment Plaintiff was suffering because of Defendant MacDowell's actions.

94. Defendant's failure to promptly and appropriately respond to the alleged sexual assault and harassment, resulted in Plaintiff, on the basis of her sex, being excluded from the opportunities and benefits of an education in violation of Title IX.

95. As a direct and proximate result of Defendant's breach, Plaintiff has suffered emotional distress and psychological damage fostered as a direct and proximate result of Defendant's deliberate indifference to her rights under Title IX.

15

96. As a direct and proximate result of Defendant's breach, Plaintiff has suffered extensive and irreparable damages and is entitled to compensatory damages, punitive damages, costs, and attorney's fees in an amount to be determined by a jury, but well more than $25,000.

### SECOND CAUSE OF ACTION
**Negligence Against Defendants the Diocese of Cleveland, Caroli, and Koka**

97. Plaintiff repeats and incorporates herein all previously pleaded averments.

98. Defendant Diocese of Cleveland owed a duty to Plaintiff as a minor child in its care and a minor child exposed to Defendant MacDowell.

99. Defendant Diocese of Cleveland failed to properly investigate Defendant MacDowell's background and ability to work with children before allowing MacDowell to have unlimited access to minor children.

100. Defendant Diocese provided negligent supervision of the employees of the Diocese of Cleveland.

101. Defendant Diocese of Cleveland had a heightened duty to ensure the safety of the minor child parishioners of the member churches.

102. Defendant Diocese of Cleveland failed these parishioners when it failed to adequately screen the employees and hired Defendant MacDowell. This failure allowed for a predator to develop a close relationship with a minor child and provided him the opportunity to groom her and convince her to enter into a relationship with him.

103. Further, Defendant Diocese of Cleveland failed its minor parishioners by failing to screen Defendant Caroli and allowing Defendants Caroli and Schill to make inappropriate comments about Plaintiff when she was a minor.

104. Defendant Diocese of Cleveland failure to adequately screen employees before putting

them in close contact with children gave Defendant MacDowell the opportunity to work

near a minor child parishioner of St. Colman's Church who was owed a special duty of

care and protection from harm.

105.   Defendant Diocese of Clevelande failed to adequately and properly investigate

complaints of abuse when it took no actions to investigate Plaintiff's claims that she had

been groomed and in a sexual relationship with an adult employee of St. Colman's

Church.

106.   Defendants Caroli and Koka as representatives of Defendant Diocese of Cleveland

minimized, ignored, and excused Defendant MacDowell's behavior when they ignored

the abnormal behavior witnessed between Defendant MacDowell and Plaintiff. Further,

by refusing to terminate Defendant MacDowell's employment, the Defendants ignored

valid claims placed against an employee of the Diocese of Cleveland.

107.   The Defendants were negligent in failing to report Defendant MacDowell's rape of

Plaintiff to the appropriate law enforcement agencies.

108.   Defendants the Diocese of Cleveland, Caroli, and Koka were negligent in their failure to

provide a safe environment to children and other parishioners within the Church operated

and/or owned by the Diocese of Cleveland and/or the St. Colman's Church parish when

they allowed a predator near minor parishioners even after valid reports of grooming,

inappropriate sexual realtionships, and rape of a minor parishioner of St. Colman's

Church.

109.   In failing to adequately screen and supervise its' employees, Defendant Diocese of

Cleveland failed to implement and maintain effective policies and procedures to prevent

sexual abuse and abuse of children.

110. Defendant Diocese of Cleveland failed to train priests and other employees to identify the signs of child molestation by fellow employees. This is clear as both Defendant Caroli and Defendant Koka noticed that Defendant MacDowell and Plaintiff acted abnormally around each other, but failed to take any steps to investigate what those abnormal behaviors meant regarding their relationship.

111. Defendant Caroli, as an agent of Defendant Diocese of Cleveland, promoted a culture of denial and deception when they negligently retained Defendant MacDowell as an employee of St. Colman's Church.

112. Defendant Caroli promoted a culture of denial and deception when he told the Plaintiff that he would not discuss her claims against Defendant MacDowell with Defendant Begin because he did not believe Defendant Begin would believe Plaintiff's story.

113. Further, Defendants Caroli, Begin, and Koka promoted a culture of denial and deception when they told Plaintiff to not inform the police that she had made previous reports to the clergy of St. Colman's Church regarding her relationship with Defendant MacDowell.

114. By failing to provide proper supervision and training over employees over its staff, failing to conduct an investigation into the claims Plaintiff made against Defendant MacDowell, and promoting a culture of denial and deception, the Diocese of Cleveland failed to exercise due care to protect the minor parishioners of St. Colman's Church.

115. As a direct result of Defendants Diocese of Cleveland, Caroli, and Koka's negligent conduct, Plaintiff has suffered the injuries and damages described herein.

116. As a direct and proximate cause of Defendants' negligence, Plaintiff has been irreparably damaged. Plaintiff is entitled to compensatory damages, punitive damages, costs, and attorney's fees in an amount to be determined by a jury, but well more than $25,000.

**THIRD CAUSE OF ACTION**
**Negligent Retention Against Defendant Diocese of Cleveland**

117. Plaintiff repeats and incorporates herein all previously pleaded averments.

118. Defendant Diocese of Cleveland, by and through its agents, servants and employees, became aware, or should have become aware, of problems indicating that MacDowell was an unfit agent with dangerous and exploitive propensities, yet Defendant Diocese of Cleveland failed to take any further action to remedy the problem and failed to investigate or remove MacDowell from working with children.

119. As a direct and proximate cause of Defendants' negligence, Plaintiff has been irreparably damaged. Plaintiff is entitled to compensatory damages, punitive damages, costs, and attorney's fees in an amount to be determined by a jury, but well more than $25,000.

**FOURTH CAUSE OF ACTION**
**Gross Negligence**

120. Plaintiff repeats and incorporates herein all previously pleaded averments.

121. Given the totality of the circumstances, the Defendants Diocese of Cleveland, Caroli, Begin, and Koka failed to exercise even the slightest amount of care or diligence.

122. The Defendants Diocese of Cleveland, Caroli, Begin, and Koka allowed Defendant MacDowell to have extensive amounts of time alone with the Plaintiff and other minor children over the course of many years.

123. The Defendants Diocese of Cleveland, Caroli, Begin, and Koka allowed Defendant MacDowell to groom the Plaintiff throughout their years-long relationship and failed to intervene despite comments by Defendants Caroli and Koka that their relationship appeared abnormal.

124. Defendant Diocese of Cleveland exercised no care or diligence when it allowed

Defendant MacDowell to continue his employment at St. Colman's Church, without conducting any investigation into Plaintiff's claims.

125. Defendant Diocese of Cleveland failed to exercise any care or diligence when they allowed Defendants Caroli and Schill to make inappropriate comments about Plaintiff when she was a minor.

126. As a direct and proximate cause of Defendants' negligence, Plaintiff has been irreparably damaged. Plaintiff is entitled to compensatory damages, punitive damages, costs, and attorney's fees in an amount to be determined by a jury, but well more than $25,000.

**<u>FIFTH CAUSE OF ACTION</u>**
**Intentional Infliction of Emotional Distress**

127. Plaintiff repeats and incorporates herein all previously pleaded averments.

128. Defendant MacDowell acted intentionally or recklessly in his actions towards Plaintiff that were intended or done with deliberate disregard to a high probability that emotional distress would follow.

129. Defendant MacDowell preyed upon and groomed Plaintiff from the age of fourteen. He spent extensive amounts of time alone with Plaintiff and used his position, age, and posture to assert himself as someone Plaintiff could trust. Once he had established this trusting relationship, he used Plaintiff's insecurities to begin a sexual relationship with her. The dynamic of this relationship allowed Defendant MacDowell to continue to use his power and position to pressure Plaintiff into sexual acts she did not consent to and ultimately used force when Plaintiff was no longer willing.

130. These circumstances would cause a high degree of possibility that emotional distress would occur to any reasonable person.

131. In grooming, having a sexual relationship with a minor child, and ultimately raping a

former sexual partner who conveyed the relationship had ended, Defendant MacDowell's behaved in an extreme and outrageous manner that went beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized society.

132. The totality of the circumstances were sufficiently severe to cause genuine and substantial emotional distress or mental harm to the average person.

133. As the employer of Defendant MacDowell, Defendant Diocese of Cleveland is vicariously liable for his actions against the Plaintiff.

134. As a direct and proximate cause of Defendants' negligence, Plaintiff has been irreparably damaged. Plaintiff is entitled to compensatory damages, punitive damages, costs, and attorney's fees in an amount to be determined by a jury, but well more than $25,000.

**SIXTH CAUSE OF ACTION**
**Breach of Fiduciary Duty**

135. Plaintiff repeats and incorporates herein all previously pleaded averments.

136. The Defendants had a fiduciary duty to Plaintiff and other similarly situated parishioners of the Diocese of Cleveland.

137. This duty required the Defendants to act in a way that would protect their parishioners and act in their best interest. This included investigating the agent's wrongdoings, warning parishioners who might be exposed to such wrongdoing, and taking immediate action against the agent known to have committed wrongful acts.

138. Here, Defendants MacDowell, Schill, Caroli, Begin, and Koka were all employees, and therefore agents, of Defendant Diocese of Cleveland.

139. By failing to investigate Plaintiff's claims or to take steps to protect the parishioners from Defendants MacDowell, Caroli, Begin, or Koka, Defendant Diocese of Cleveland breached their fiduciary duty to their parishioners.

140. As a direct and proximate cause of Defendants' negligence, Plaintiff has been irreparably damaged. Plaintiff is entitled to compensatory damages, punitive damages, costs, and attorney's fees in an amount to be determined by a jury, but well more than $25,000.

**SEVENTH CAUSE OF ACTION**
**Public Nuisance**

141. Plaintiff repeats and incorporates herein all previously pleaded averments.

142. Defendant has conspired and engaged in efforts to conceal from the general public the sexual assaults committed by, the identity of, and the ephebophilic tendencies of, Defendant MacDowell and/or protect Defendant MacDowell from criminal prosecution.

143. The negligence and/or deception and concealment by Defendant was and is injurious to the health and/or indecent or offensive to the senses and/or an obstruction to the free use of property by the general public, including by not limited to, the residents of the County of Cuyahoga and all over members of the general public who live in communities where Defendant's credibly accused molesters lived.

144. It was and is indecent and offensive to the senses, so as to interfere with the general public's comfortable enjoyment of life in that the general public cannot trust Defendant Diocese of Cleveland to warn parents of the presence of the former credibly accused molester, nor to identify their form credibly accused molester, nor to disclose their patterns of conduct in grooming and sexually assaulting children, all of which create and impairment of the safety of the children in the neighborhoods of Cleveland and all other places where Defendant Diocese of Cleveland conducted, and continue to conduct their business.

145. The negligence and/or deception and concealment by Defendant Diocese of Cleveland was specially injurious to Plaintiff's health in that when Plaintiff finally discovered the

negligence and/or deception and concealment of Defendant Diocese of Cleveland, Plaintiff experienced mental and emotional distress that Plaintiff had been the victim of the Defendant Diocese of Cleveland's negligence and/or deception and that due to Defendant Diocese of Cleveland's negligence and/or deception and concealment Plaintiff had not been able to receive timely medical treatment needed to deal with the trauma Plaintiff had suffered and continues to suffer as a result of the grooming and molestation.

146. The continuing public nuisance created by Defendant Diocese of Cleveland was, and continues to be, the proximate cause of the injuries and damages to the general public and of Plaintiff's special injuries and damages as alleged.

147. In doing the aforementioned acts, Defendant Diocese of Cleveland acted negligently and/or intentionally, maliciously, and with conscious disregard for Plaintiff's rights.

148. As a direct and proximate cause of Defendants' negligence, Plaintiff has been irreparably damaged. Plaintiff is entitled to compensatory damages, punitive damages, costs, and attorney's fees in an amount to be determined by a jury, but well more than $25,000.

**<u>EIGHTH CAUSE OF ACTION</u>**
**Vicarious Liability Against Defendant Diocese of Cleveland**

149. Plaintiff repeats and incorporates herein all previously pleaded averments.

150. At all material times, Defendant MacDowell was employed by Defendant Diocese of Cleveland. Defendant MacDowell was under Defendant Diocese of Cleveland's direct supervision and control when he committed the acts described herein. Defendant MacDowell engaged in this conduct while in the course and scope of his employment with Defendant Diocese of Cleveland and/pr accomplished the sexual abuse by virtue of his job-created authoirty and therefore Defendant Diocese of Cleveland is liable for the conduct of Defendant MacDowell under the law of vicarious liability, including the

doctrine of respondeat superior.

151. As a direct and proximate cause of Defendants' negligence, Plaintiff has been irreparably damaged. Plaintiff is entitled to compensatory damages, punitive damages, costs, and attorney's fees in an amount to be determined by a jury, but well more than $25,000.

**WHEREFORE**, Plaintiff Tatu Wadesis respectfully prays that judgment be entered in her favor in an amount to be determined by a jury but well more than $75,000. Plaintiff further prays for an award of actual, compensatory, and punitive damages, for an award of costs and attorneys' fees as outlined here, as well as whatever additional legal and equitable relief the Court may find just under the circumstances.

Respectfully submitted,

*/s/Leslie O. Murray*
Leslie O. Murray (0081496)
Direct: (419) 677-6689
Leslie@lesliemurraylaw.com
*/s/John T. Murray*
John T. Murray (0008793)
Direct: (419) 656-2042
John@lesliemurraylaw.com
*/s/Alexandra D. Lavelle*
Alexandra D. Lavelle (0099601)
Direct: (419) 665-6198
Alex@lesliemurraylaw.com
**LESLIE MURRAY LAW LLC**
316 E. Water St
Sandusky, OH 44870

*/s/Thomas S. Schaffer*
Thomas J. Schaffer (0046730)
Schaffer and Associates
3130 Executive Parkway Suite 910
Toledo, Ohio 43606
Ph: 419 350-8277
Cell: 567 288-5358
Fax: 419 851-0024
Email: tschaffer@schafferlawyers.com

## **JURY DEMAND**

Pursuant to Rule 38(B) of the Federal Rules of Civil Procedure, Plaintiff hereby demands

a trial by jury on all issues.

*/s/ Leslie O. Murray*_____

Leslie O. Murray (0081496)

**LESLIE MURRAY LAW**
